**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| KIERRA MACHAE DUNMORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 2:24-cv-225 |
| | ) | |
| EXPERIAN INFORMATION | ) | |
| SOLUTIONS, INC.; EQUIFAX | ) | |
| INFORMATION SERVICES, LLC; and | ) | |
| RENTGROW, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Plaintiff Kierra Machae Dunmore has a twin brother named Kierre Machone Dunmore. The similarity of their names and the confusion it has engendered has caused Kierra a lot of grief over the years, especially since her brother has a criminal record. Dunmore believes that the most recent confusion between her and her brother was the fault of Experian Information Solutions, Inc. ("Experian") that led to a delay in her being approved to lease an apartment and caused her distress. She claims that Experian failed to follow reasonable procedures to assure maximum possible credit report accuracy under the Fair Credit Reporting Act ("FCRA") because Experian mixed her credit file with her twin brother's.

The case is presently before the Court on a number of motions. Dunmore has moved for partial summary judgment on the issue of credit report accuracy [DE 66] and to exclude expert testimony by Experian's witness Mary Methvin [DE 64]. Experian has moved for summary judgment on Kierra Dunmore's remaining claim [DE 71] and has

1

moved to exclude or limit the expert testimony of Plaintiff's witness Douglas Hollon [DE 77]. In sum, because Kierra Dunmore has failed to show that she suffered any damages specifically caused by Experian mixing some of her brother's credit information into her credit file, Experian's motion for summary judgment will be granted, and the other pending motions will be denied as moot.

### Background

Plaintiff Kierra Machae Dunmore and her brother, Kierre Machone Dunmore, are twins. [DE 87, ¶ 16.] Even for twins, they share remarkably similar identifying information. Their first names are only one letter off, their middle names are two letters off, they have the same last name, they have previously shared the same addresses, their social security numbers are only one number off sequentially, and of course, they share the same birthday. *Id.* at ¶¶ 16-21. Unsurprisingly, Kierra Machae Dunmore and Kierre Machone Dunmore have had their paperwork mixed up from their childhood through adulthood in various ways by individuals ranging from school officials to employers. *Id.* at ¶¶ 22-23. While it started with simple mix-ups in school, this became a larger and larger problem for Kierra as she got older. *Id.* at ¶ 22. For example, in 2010, Kierre was convicted of a robbery charge in Cook County, and this charge showed up on Kierra's background check in 2017 when she was trying to return to work at United Parcel Services, Inc. *Id.* at ¶ 23.

These mix-ups by various organizations persisted into 2024, when the events giving rise to this case occurred. On March 13, 2024, Kierra submitted a lease application to an apartment complex named Homewood Village. *Id.* at ¶ 39.

Homewood Village contracts with Screening Reports, Inc. ("SRI") to conduct background checks on applicants. *Id.* at ¶ 40. SRI requested Kierra's credit file from Experian. *Id.* at ¶ 41. Experian provided a credit report to SRI that mixed some of Kierra's information with her brother's, but importantly, did not include any information relating to criminal records. *Id.* at ¶ 43; DE 76, Ex. F.

Around March 15, 2024, Homewood Village emailed Kierra and told her that her "prequalification screening was approved based on a review of all eligibility criteria except for criminal history information" and that they would "review any applicable criminal history and will notify you either that: (1) your application is accepted; or (2) your application may be declined based on criminal history information." [DE 87, ¶ 44; DE 76, Ex. G.] In other words, what was holding up the approval process was not her credit history; it was her criminal background check. *Id.* A few days later, Kierra was told that her application was denied based on the results of her background check. [DE 87, ¶ 45.]

Kierra then called SRI, and an SRI representative told her that she was denied due to a felony robbery charge in Cook County. *Id.* at ¶ 46. Kierra told the representative that she had not committed a robbery, and that she was being confused for her twin brother, Kierre. *Id.* at ¶¶ 46-47. An SRI representative looked into the issue and told her they would contact Homewood Village about the mix up. *Id.* Kierra also provided Homewood Village with a copy of her criminal history report from the Chicago Police Department. *Id.* at ¶ 48. On March 27, 2024, Kierra also requested a copy of her credit report from Experian for herself. *Id.* at ¶ 36. On March 29, 2024, an SRI

representative worked with Kierra and Homewood Village to clear up the issue, and Kierra's housing application was approved that same day. *Id.* at ¶¶ 49-52. Kierra moved into Homewood Village on April 4, 2024. *Id.* at ¶ 53. In all, SRI's mistake in reporting Kierra's criminal history delayed her move into the apartment by two weeks.

On July 1, 2024, Kierra filed this lawsuit against Experian alleging violations of the FCRA for mixing her information with her twin brother's in her credit report. *Id.* at ¶ 54. Kierra admits in her response to Experian's submitted statement of facts that she did not notify Experian of the mixed credit report or otherwise dispute it prior to the filing of this lawsuit. *Id.* at ¶ 34. After Kierra filed the lawsuit, Experian unmixed her credit file and placed a "do not combine" indicator on it. *Id.* at ¶ 55.

### Legal Standard

Kierra has moved for partial summary judgment against Experian on the issue of accuracy under the Fair Credit Reporting Act. [DE 66.] Experian has moved for summary judgment on Kierra's remaining claim in its entirety. [DE 71.]

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, I must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). The fact that Kierra Dunmore and Experian have filed

cross-motions for summary judgment does not alter the standard. The Court simply "construe[s] all inferences in favor of the party against whom the motion under consideration is made." *Metro. Life Ins. Co. v. Johnson*, 297 F.3d 558, 561-62 (7th Cir. 2002) (quoting *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)).

### Discussion

Kierra has one claim remaining against Experian in this case under § 1681e(b) of the FCRA. [1] That section requires that consumer reporting agencies, like Experian, "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom [a] report relates." 15 U.S.C. § 1681e(b). However, the "FCRA is not a strict liability statute." *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 971 (7th Cir. 2004). To succeed on a § 1681e(b) claim, a Plaintiff must show "(1) inaccurate information was included in [her] consumer credit reports; (2) the inaccuracy was due to the consumer reporting agency's failure to follow reasonable procedures to assure maximum possible accuracy; (3) [she] suffered injury; and (4) the injury was caused by the inclusion of the inaccurate entry." *Hupfauer v. Citibank, N.A.*, 2016 WL 4506798, at *3 (N.D. Ill. Aug. 19, 2016) (quoting *Moline v. Experian Info. Sols., Inc.*, 289 F. Supp. 2d 956, 958 (N.D. Ill. 2003)).

Courts have grappled at length with the reasonableness of consumer reporting agency procedures, including in situations like this where the consumer shares

---

[1] Initially, Kierra sued Experian under both 15 U.S.C. § 1681e(b) for failing to follow reasonable procedures to assure maximum possible credit report accuracy and 15 U.S.C. § 1681i for failing to perform a reasonable reinvestigation. [DE 1.] However, on December 18, 2025, Kierra voluntarily dismissed her claim under § 1681i. [DE 87, ¶ 62.]

significant personal information with someone else and did not notify the reporting agency prior to the litigation. *See, e.g, Garrett v, Experian Info. Sols, Inc.*, 785 F. Supp. 3d 1077, 1082 (N.D. Fla. 2025) ("Here, as all agree, the brothers' information was remarkably similar… In other words, this is not a situation in which any reasonable consumer reporting agency would have known these were two different people."); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 286 (7th Cir. 1994) ("A credit reporting agency that has been notified of potentially inaccurate information in a consumer's credit report is in a very different position than one who has no such notice."). But I need not add to the substantial case law on what a reasonable procedure is for a consumer reporting agency, because there is a more glaring, fundamental issue with the third and fourth elements of Plaintiff's claim: showing that she suffered an injury and that the injury "was caused by the inclusion of the inaccurate entry." *Hupfauer*, 2016 WL 4506798, at *3 (quoting *Moline*, 289 F. Supp. 2d at 958).

## I.      Causation

Kierra needs to show that the inaccurate information Experian included in her report caused her alleged damages. *Id.*; *see also Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2001) (affirming summary judgment in mixed file case where the plaintiff had failed "to present evidence that any of the creditors who denied him credit after receiving a report on him and his brother from Trans Union did so because of the report on John [the brother]."). In her complaint, Kierra alleged that "as a direct result of Defendant Experian's inaccurate reporting, Homewood Village denied Plaintiff's housing application." [DE 1, ¶ 151.] Even after discovery was completed, Kierra

continued to assert in her summary judgment briefing that as "a result of Experian's inaccurate reporting, Plaintiff was denied housing opportunities…." [DE 67, 2.] But the undisputed facts reveal that to be demonstrably false.

On March 15, 2024, Homewood Village notified Kierra that "her pre-qualification screening *was approved except for criminal history information.*" [DE 87, ¶ 44] (emphasis added). Homewood Village went on to tell Kierra that they would "review any applicable criminal history and will notify you either that: (1) your application is accepted; or (2) your application may be declined based on criminal history information." *Id.* What this meant is that, from a creditworthiness point of view, Kierra was approved.  The only thing holding up final approval was the criminal history check.

The fundamental point on which this case turns is the fact that the Experian credit report on Kierra contained no criminal history at all. *Id.* at ¶ 43; DE 76, Ex. F. As a result, SRI's background check, which confused Kierra's criminal history with her brother's, is simply not a mistake that can be attributed to Experian, as SRI did not get that inaccurate criminal history information from Experian. And while Experian's credit report did erroneously mix some *other* information from Kierre's credit file with Kierra's, Homewood Village's initial decision to deny Kierra's application was explicitly based on her criminal background check, not anything that appeared in her Experian credit report. [DE 87, ¶¶ 46-49.] Summary judgment must therefore be granted to Experian on any claim related to the harm suffered by Kierra in the two-week delay

waiting for the apartment to be approved. Experian simply wasn't the cause of that delay and any attendant harm.

## II.     Plaintiff's Alleged Emotional Damages From Her Mixed Credit File

Perhaps recognizing the weakness of her claim relating to the apartment, in her response to Experian's motion for summary judgment, Kierra attempts to sidestep the issue completely and focus on emotional damages from the stress caused by Experian's inaccurate reporting, generally. She argues that:

> According to Experian, all of Plaintiff's emotional distress arose from the problems in her housing search, and those problems can only be traced to inaccurate criminal history reporting by another CRA. But Plaintiff's evidence makes it clear that her stress had two sources, one of which had nothing to do with her housing search – the reporting by Experian that mixed her credit history with her brother's.

[DE 86, 19.] This is a bit of head fake. A review of the Complaint shows that almost all of the focus in the Complaint was on the harm caused to Kierra from the delay in securing the apartment. [DE 1.]  But now, at summary judgment, the argument has shifted from the harm caused by the delay in getting the apartment to the general stress caused by Experian having a mixed credit file for her at all. That's the issue I will take up next.

The Seventh Circuit has "maintained a strict standard for a finding of emotional damages because they are so easy to manufacture." *Ruffin-Thompkins v. Experian Info. Sols., Inc.*, 422 F.3d 603, 609 (7th Cir. 2005) (quoting *Sarver,* 390 F.3d at 971). In her response, Kierra points to her testimony that the mixed file confusing her with her brother, even after the misunderstanding with Homewood Village was resolved, "was

8

going to bother me in the long run, down the line. It was still stress because I was still trying to get it removed." [DE 68, Ex. 2, 139:2-9.][2] She also points to the declarations of her mother, Karen Hodo, and her sister, Kichelle Carey, both of whom state that Kierra was upset about having her credit file mixed with her brother's. [DE 86 Ex. 3, Ex. 4.] Kierra testified that she never went to the doctor or took any medication for her alleged stress relating to this case. DE 68, Ex. 2, 136:24–137:3, 140:1–3.

The evidence does not tie her emotional distress directly to Experian maintaining a mixed credit file, nor does the evidence "meet our 'high threshold for proof of damages for emotional distress.'" *Ruffin-Thompkins*, 422 F.3d at 610 (finding that the plaintiff did not suffer emotional damages in an FCRA case) (quoting *Aiello v. Providian Fin. Corp.*, 239 F.3d 876, 880 (7th Cir. 2001)); *see also Schmit v. Trans Union LLC*, 2004 WL 785098, at *4 (N.D. Ill. April 12, 2004) (no recovery when plaintiff made only an assertion of emotional distress and produced insufficient evidence linking it to erroneous report). Most of Kierra's testimony about her stress relates to her application denial from Homewood Village, which Experian did not cause, and the few statements that do relate to emotional damages directly from her Experian credit file being mixed are "'at most, self-serving and conclusory statements' that are insufficient to establish emotional damages." *Jackson v. Experian Info. Sols., Inc.*, 236 F. Supp. 3d 1058, 1064 (N.D.

---

[2] Regarding her statement that "she was trying to get it removed," evidence shows she placed a one-minute phone call to Experian. She does not remember exactly what happened, but testified that they "probably had me on hold or something went wrong" and when asked if she hung up responded "[c]ould have been, I guess." [DE 68, Ex. 2, 112:4-113:4.] Kierra does not dispute that she did not notify Experian of the mixed credit file prior to this litigation. [DE 87, ¶ 34.]

Ill. 2017) (finding no emotional damages in FCRA case) (quoting *Bagby v. Experian Info. Sols., Inc.*, 162 Fed. Appx. 600, 605 (7th Cir. 2006)).

Not only are Kierra's claims of emotional damages self-serving, they are also vague. To attempt to tie some of the emotional damages directly to Experian, she relies on her testimony that she was still stressed about the mixed credit file even after getting housing at Homewood Village, because she thought the mixed credit file might "bother [her] in the long run, down the line." [DE 68, Ex. 2, 139:2-9.] Emotional damages need to be presented with specificity, especially in non-obvious scenarios such as this one, where the emotional damages are allegedly caused by the very existence of a mixed credit report and the potential for it to cause a problem in the future. *Konter v. CSC Credit Servs., Inc.*, 606 F. Supp. 2d 960, 969 (W.D. Wisc. 2009) (finding no emotional damages where "the only evidence adduced by plaintiff regarding the potential impact of the 'inaccurate information' comes in the way of general observations about how the credit dispute affected him."); *Kleyweg v. Bank of America, N.A.*, 2017 WL 553186, at *4, n.4 (N.D. Ind. Feb. 10, 2017) (finding that there is a "strict standard" for emotional damages in an FCRA case and that the plaintiff's "general assertions of emotional distress do not meet that standard.").

The brief declarations from Kierra's mother and sister do not move the needle. Both declarations are less than two pages in length, with the majority of them being about Kierra's stress from having her application to Homewood Village denied, which Experian had no part in causing for the reasons described above. A few portions of the declarations could conceivably be viewed as connecting Experian to her emotional

distress; however, it is far from clear. For example, her sister stated in her declaration that Kierra "still felt defeated and like she couldn't move forward in life because of companies mixing up her and Kierre." [DE 86 Ex. 4.] This does not tie any particular emotional distress to Experian's mixed credit report, as opposed to any of the other companies who have, or will in the future, mix up Kierra's information with Kierre's. This is similar to the *Konter v. CSC Credit Services*, where the plaintiff presented affidavits from his wife, brother, and mother-in-law all stating that he was upset while dealing with inaccurate credit reporting, but the declarations here, were unclear as to "whether plaintiff's family is referring to problems for which defendant is responsible[.]" *Konter*, 606 F. Supp. 2d at 969. As the court in *Konter* stated, "[n]either plaintiff's deposition nor the affidavits provided by his family contain a direct link between the inaccurate information on defendant's credit report and his emotional distress." *Id.*

Damages are not presumed under the FCRA, and Kierra failed to present sufficient evidence in the briefing to meet the high standard for emotional damages in FCRA cases like this one. *Bagby*, 162 Fed. Appx. at 605 ("[D]amages are not presumed under the FCRA; rather, the consumer must affirmatively establish that she is entitled to damages."); *Ruffin-Thompkins*, 422 F.3d at 609–10 (noting that "the district court 'need not scour the record' to find ... evidence" a party fails to cite in response to a motion for summary judgment). Summary judgment will therefore be granted to Experian on any claim that Kierra suffered emotional damages caused by Experian.

### III.    Statutory Damages

While not a focus of the briefing, I also note that Kierra cannot recover statutory damages in this case simply by showing that Experian furnished inaccurate information in her credit report, which is a procedural violation of the FCRA. As a preliminary matter, "statutory damages are available only for willful violations of the [Fair Credit Reporting] Act[.]" *Murray v. New Cingular Wireless Servs., Inc.*, 523 F.3d 719, 725-726 (7th Cir. 2008). Showing a willful violation requires evidence that Experian was "reckless – something more than negligence but less than knowledge of the law's requirements." *Id.* at 726. As the Supreme Court explained, a company subject to the "FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Safeco Insurance Co. v. Burr*, 551 U.S. 47, 69 (2007).

Showing willfulness in a case such as this one, where the plaintiff shared substantial personal information with the person their file was mixed with and did not notify the credit reporting agency of the issue until they filed suit is a difficult task. However, willfulness is another issue we need not reach in this case, because the bare violation of the statute, without a sufficient tie to a concrete injury, does not create standing, and thus cannot form the basis of a suit. "Identifying a violation of a statutory right does not automatically equate to showing injury-in-fact for standing purposes." *Crabtree v. Experian Info. Sols., Inc.*, 948 F.3d 872, 877 (7th Cir. 2020). Because the injury-in-fact requirement is rooted in the Constitution, Congress cannot "statutorily grant[ ]

12

the right to sue to a plaintiff who would not otherwise have standing." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (internal quotation marks omitted). "While a bare procedural violation, divorced from any concrete injury may be particularized because it is unique to the individual plaintiff, without more it is insufficient to confer standing." *Crabtree*, 948 F.3d at 877 (internal quotation marks omitted).

In *Spokeo, Inc. v. Robins*, the Supreme Court established that showing a procedural violation of the FCRA alone is not necessarily sufficient to meet the concreteness requirement for standing. *Spokeo*, 578 U.S. at 339. Since *Spokeo*, the Seventh Circuit has developed a line of cases fleshing out that a sufficient link between the statutory violation and a concrete injury is necessary for standing and thus for *any* relief to be granted. *Crabtree*, 948 F.3d at 877-79 (collecting cases). As described above, Kierra has not shown that the temporary denial of her application to Homewood Village was tied to Experian furnishing inaccurate credit information, nor has she sufficiently established emotional damages arising specifically from Experian mixing her credit file with her brother's. While showing a procedural violation "can be sufficient in some circumstances," *Spokeo*, 578 U.S. at 342, it is not sufficient where, as here, the plaintiff "has identified no harm" stemming from the defendant's alleged violation of the FCRA. *Crabtree*, 948 F.3d at 879.

## IV.    The Other Motions

Because I am granting summary judgment to Experian due to Kierra failing to show that she suffered damages caused by Experian mixing some of her credit information with her brother's, Kierra's motion for partial summary judgment on the

issue of whether her credit report was accurate is rendered moot. Kierra's motion

relates only to the element of accuracy and thus, even if decided in Kierra's favor, could

not spare her claim from summary judgment on the elements of causation and

damages. *See Hupfauer*, 2016 WL 4506798, at *3.

Likewise, Kierra's motion to exclude Experian's expert Mary Methvin and

Experian's motion to exclude Kierra's expert Douglas Hollon are also denied as moot.

Both experts have experience working at Experian (Methvin still works there) and their

proposed testimony focuses on whether Experian's procedures to ensure maximum

possible accuracy meet industry standards. This testimony relates to the "reasonable

procedures" element discussed above that, even if decided in Kierra's favor, would not

save her claim from summary judgment on the elements of causation and damages.

Hollon also offers some opinions based on his experience working in the credit

reporting industry that could be viewed as pertaining to damages. However, Kierra

asserts that these opinions "pertain[] to the typical damages experienced by plaintiffs in

FCRA cases generally and not to the specific damages experienced by Plaintiff here[.]"

[DE 85, 5.] Even if Hollon were able to testify to the problem of inaccurate credit

reporting and its effects on consumers generally, that would not change the result here.

Kierra has failed to show that she *specifically* suffered damages due to Experian, which

is something Kierra expressly admits Hollon cannot offer an opinion on and, indeed,

has been precluded from offering an opinion on in prior cases. *See, e.g., Huizar v.*

*Experian Info. Sols. Inc.*, 2025 WL 3085049, at *4 (N.D. Ind. Nov. 5, 2025) ("As has been

done by courts previously, Hollon will not be allowed to offer his opinion as to [the

plaintiff's] damages. . . . any statements concerning damages, emotional or otherwise, included in Hollon's report will not be considered by the Court on summary judgment."); *Oatway v. Experian Info. Sols., Inc.*, 2025 WL 2689029, at *11 (W.D. Wash. Sept. 19, 2025) ("[The plaintiff] can speak to his own damages, and Hollon's recitation of his damages is unhelpful (especially considering that Hollon is not qualified to opine on [the plaintiff's] emotional distress)."). Accordingly, both motions to exclude will be denied as moot.

**Conclusion**

Experian's motion for summary judgment [DE 71] is **GRANTED** because Plaintiff Kierra Dunmore has failed to show that she suffered any damages caused by Experian mixing some of her information with her brother's credit file. Accordingly, Kierra Dunmore's motion for partial summary judgment [DE 66], Kierra Dunmore's motion to exclude expert testimony by Experian's expert witness Mary Methvin [DE 64], and Experian's motion to exclude or limit the expert testimony of plaintiff expert Douglas Hollon [DE 77] are **DENIED AS MOOT**.

SO ORDERED.

ENTERED: July 25, 2026.

 /s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT